IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **EMANUEL LAY, SR.** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. **PJM 18-2183** |
| **LOCAL UNION 689 OF THE AMALGAMATED TRANSIT UNION, AFL-CIO** | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Emanuel Lay, Sr. ("Lay") filed this action on July 16, 2018 against his former employer, the Washington Metropolitan Area Transit Authority ("WMATA") and his union, Local Union 689 of the Amalgamated Transit Union, AFL-CIO ("Local 689"), alleging breach of a collective bargaining agreement ("CBA") and breach of the union's duty of fair representation. Both WMATA and Local 689 filed Motions to Dismiss. ECF Nos. 4, 9. The Court has previously dismissed WMATA from the case. ECF No. 19.

For the following reasons, the Court now **GRANTS** Local 689's Motion to Dismiss.

**I.  Factual and Procedural Background**

Between November 16, 2001 and April 26, 2016, Lay worked for WMATA, primarily as a Station Manager and Bus Operator at WMATA's Glenmont Division. Amended Complaint ("AC") at ¶¶ 10–11, ECF No. 21. During that time, he was a dues-paying member of Local 689, covered by the collective bargaining agreement between WMATA and Local 689. *Id.* at ¶¶ 11–12.

1

In February 2015, Lay informed his union representative, Mary Canady, that his former girlfriend told him she planned to fabricate allegations against him that would lead to his dismissal from WMATA. *Id.* at ¶ 13. Shortly thereafter, Lay's former girlfriend filed a complaint with the WMATA Office of Inspector General ("OIG"), alleging that Lay had (a) participated in a scheme to defraud WMATA of farecard revenue for personal gain, (b) misused other WMATA resources, and (c) misappropriated property from WMATA's lost and found system. *Id.* at ¶ 14. Under the terms of the collective bargaining agreement Local 689 had with WMATA, Lay was provided with a statement of the precise charges against him on August 24, 2015. *Id.* at ¶ 16. Also, beginning on August 24, 2015, Lay allegedly cooperated with an investigation by OIG, consenting to an interview without representation by Local 689. *Id.* at ¶ 19. On September 15, 2015, however, Lay declined a request by OIG to be re-interviewed without representation by Local 689. *Id.* at ¶ 20. Lay, through counsel, attempted to contact WMATA to discuss the investigation further, but was unsuccessful. *Id.* at ¶ 21. On December 24, 2015, OIG completed its investigation of Lay. *Id.* at ¶¶ 23–24.

On April 20, 2016, Lay attended a meeting at the Glenmont Division of WMATA to discuss the results of the OIG investigation. *Id.* at ¶ 27. Present at the meeting were WMATA Assistant Superintendent Dionne Truehart, WMATA Acting Assistant Director Shanita Bowmen, WMATA Supervisor J.D. Bright, Local 689 Shop Steward Ozzie L. Andrews, and a representative from OIG. *Id.* At the meeting, Lay was asked to address the allegations against him but refused to discuss them without a representative from Local 689 present. *Id.* at ¶ 29. The meeting ended but was reconvened during the afternoon of April 20, with WMATA Senior Supervisor John Bright joining the original group. *Id.* at ¶ 30. Lay alleges that WMATA representatives ignored his request that Andrews be appointed to represent him during the meeting, and that instead WMATA

2

appointed Local 689 Assistant Business Agent Marlene Flemmings-McCann to act on his behalf. *Id.* at ¶ 31. After the appointment of Flemmings-McCann, Lay submitted a written statement denying the allegations of fraud made against him. *Id.* at ¶ 33. There was no further meeting. On April 26, 2016, after reviewing OIG's report of its investigation into the allegations against Lay, WMATA terminated him from service. *Id.* at ¶ 34.

On May 4, 2016, Lay filed a grievance with Flemmings-McCann, alleging that he had been wrongfully terminated. *Id.* at ¶ 35. Flemmings-McCann invoked Lay's right to arbitration. Accordingly, pursuant to the collective bargaining agreement for WMATA employees, hearings on Lay's dismissal were held on February 2 and March 31, 2017.[1] At the March 31 hearing, Lay alleges that WMATA representatives, as well as Flemmings-McCann, prevented one of his key witnesses, Shop Steward Andrews, from testifying on his behalf. *Id.* at ¶ 40. On July 14, 2017, thereafter, he says, he contacted Flemmings-McCann to learn of the outcome of the hearing, and Flemmings-McCann allegedly told him she had not received notice of decision. *Id.* at ¶ 41. On September 22, 2017, the arbitration board issued its decision, affirming Lay's termination. *Id.* at ¶ 42. Lay alleges he did not receive a copy of the arbitration decision, nor did he receive notice of the decision, nor was he advised of his right to appeal within six months. Lay says it was not until February 2, 2018—more than four months following the arbitration decision—that he received a voicemail message from Flemmings-McCann notifying him of the decision. *Id.* at ¶¶ 44–45.

On July 16, 2018, more than five months after that, Lay filed the present action against WMATA and Local 689, alleging breach of the collective bargaining agreement and breach of the duty of fair representation. ECF No. 1. WMATA moved to dismiss the Complaint on August 31,

---

[1] In his Amended Complaint, Lay states that the arbitration board hearing on his grievance occurred on "March 23, 2017. AC at ¶ 40. However, the arbitration board's opinion states that its hearings occurred on "February 2 and March 31, 2017." ECF No. 9-4 at 2. The Court will cite to the dates that the arbitration board used.

3

2018, ECF No. 4, and Local 689 moved to dismiss on September 14, 2018. ECF No. 9. On December 11, 2018, the Court dismissed WMATA from the case on the grounds that the time for Lay to appeal the arbitration decision had run, but deferred ruling on Local 689's Motion. ECF No. 19. Instead, the Court required Local 689 to file supplemental briefing discussing any duty it may have had to inform Lay of his right to appeal the adverse decision of the arbitration board at or about the time the decision was issued. *Id.* The Court also granted Lay leave to file an Amended Complaint, which he did on December 28, 2018. ECF No. 21. Local 689 filed the required supplement to its Motion to Dismiss on December 31, 2018, ECF No. 22. Lay filed his supplemental Opposition on January 10, 2019, ECF No. 23, and Local 689 filed its supplemental Reply on January 22, 2019. ECF No. 24.

## II. Analysis

### A. Statute of Limitations

Lay's suit is filed pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), which provides for "hybrid" claims of breach of a collective bargaining agreement against an employer and breach of the duty of fair representation against an employee's union. 29 U.S.C. § 185, *et seq.* Such claims are subject to a six-month statute of limitations. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1981); *Foy v. Giant Food, Inc.*, 298 F.3d 284, 291 (4th Cir. 2002) (citing *DelCostello*, 462 U.S. at 171–72.).

A hybrid cause of action arises when an employee knew or should have known that a violation of his rights occurred. *See Dement v. Richmond, Fredericksburg & Potomac R.R. Co.*, 845 F.2d 451, 460–61 (4th Cir. 1988). The cause of action "'accrues at the point where the grievance procedure has been exhausted or otherwise breaks down to the employee's disadvantage. It is only at this point that the employee is cognizant of any alleged breach of the duty owed him

4

by the union.'" *Id.* at 460. (quoting *Haynes v. Reynolds Metals Co.*, 769 F.2d 1520, 1522 (11th Cir. 1985)). However, the six-month statute of limitations may be equitably tolled if "a defendant, by active deception, conceals a cause of action." *Lekas v. United Airlines, Inc.,* 282 F.3d 296, 301 (4th Cir. 2002). To invoke equitable tolling, a plaintiff must show that the defendant attempted to mislead him, and that plaintiff reasonably relied on the misrepresentation by neglecting to file a timely action. *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987).

In the present case, the statute of limitations to file suit on Lay's hybrid claim began to run on September 22, 2017, when the arbitration board issued its decision affirming his termination by WMATA. Applying the *DelCostello* six-month statute of limitations from that date, Lay had until March 22, 2018 to bring his action against WMATA and Local 689. As noted, however, Lay filed his Complaint on July 16, 2018, almost four months after the statute of limitations period had run.

Lay argues that the six-month statute of limitations should be tolled because Local 689 withheld notice of the arbitration board's decision from him between September 22, 2017 and February 2, 2018, which occasioned his delay in filing his action. However, Lay fails to plead sufficient specific factual allegations to the effect that Local 689 actively deceived him in any way about the status of his grievance. Lay claims he spoke with union representative Flemmings-McCann on July 14, 2017, and she told him that she had heard no news about the arbitration board's decision. AC at ¶ 41. Flemmings-McCann's purported response, that she was awaiting a decision from the arbitration board as of that time, was not inaccurate because the board did not issue its decision until September 22, 2017, more than two months after Lay's call. In other words, her response on July 14, 2017 was entirely accurate. *Cf. Lekas*, 282 F.3d at 301 (holding that a union that informed one of its members that it was seeking clarification from a grievance board did not actively deceive the member as to whether his cause of action had accrued). Lay also

5

claims he made "numerous unsuccessful calls" to Flemmings-McCann seeking updates on his grievance, but, aside from the call on July 14, 2017, he provides no other dates or times on which he attempted to contact Flemmings-McCann or anyone else affiliated with Local 689. AC at ¶¶ 41–45.

Accepting Lay's assertion as to his purported delay in receiving a copy of the arbitration board's decision, the root problem is his own failure to update his address of record with Local 689. As a member of Local 689, he was required to provide notice of his "correct place of residence," pursuant to the constitution and general laws of Local 689's parent, the Amalgamated Transit Union. *See* ECF No. 9-6. Lay counters that Local 689 was on notice of his correct address because he submitted a change of address form to the U.S. Postal Service. ECF No. 15 at 11, 15-1 at 12. That argument is unpersuasive. Even assuming it would have been acceptable for Lay to notify Local 689 of his new address by submitting a USPS change of address form in September 2016 (as he says he did) rather than notifying Local 689 directly, Lay's mail would have been forwarded for only twelve months after September 22, 2016, *see* ECF No. 15-1 at 12, a period that, coincidentally, would have ended on the same day the arbitration board ultimately decided his grievance.

Under the circumstances, it was not unreasonable for Local 689 to assume the address it had on file for Lay was correct and to mail a copy of the board's decision to that address on September 25, 2017 and October 18, 2017, as it said it did. *See* ECF No. 9-5. Even if Local 689 was inattentive in failing to verify that the address it had on file for Lay was current, the standard for equitably tolling the statute of limitations period is "active deception" by a defendant. *See Lekas*, 282 F.3d at 301. Because Lay has not pled sufficient evidence of active deception on the

part of Local 689, and it is clear that really no such evidence exists, the statute of limitations period on his claim for breach of the duty of fair representation should not be tolled.

**B. Duty of Fair Representation**

Apart from Lay's suit being barred by the statute of limitations, he has not stated a plausible claim that Local 689 breached its duty of fair representation.

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards" that require a plaintiff to submit only a "short and plain statement of the claim showing that [he] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing Fed. R. Civ. P. 8(a)(2)). The plaintiff's statement must still contain facts sufficient to "state a claim to relief that is plausible on its face" in order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The plausibility standard requires that the plaintiff plead facts sufficient to show by "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court must accept the plaintiff's factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Legal conclusions couched as factual allegations or "unwarranted inferences, unreasonable conclusions, or arguments" do not satisfy the plausibility pleading standard. *E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). The complaint must contain factual allegations sufficient to apprise a defendant of "what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).

A labor union breaches its duty of fair representation if its conduct toward any of its members is "arbitrary, discriminatory, or in bad faith." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 354 F.3d 270, 274 (4th Cir. 2003) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967))

(internal quotation marks omitted). The union's conduct is "arbitrary" if it is "so far outside a wide range of reasonableness" as to be "wholly irrational." *Id.* (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)) (internal quotation marks omitted). While arbitrariness is an objective quality, whether a union acts in bad faith or discriminatorily depends on the "subjective motivation of the union's officials." *Id.* at 275. "The duty of fair representation prohibits only 'invidious' discrimination, such as discrimination based on constitutionally protected categories like race or gender, or discrimination that arises from animus or prejudice." *Id.* at 276 (quoting *O'Neill*, 499 U.S. at 81). Bad faith may be established if a plaintiff can show that union officials engaged in "fraud, or deceitful or dishonest action." *Id.* (quoting *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1470 (10th Cir. 1993)) (internal quotation marks omitted). "[M]ere negligence, poor judgment or inefficiency on the part of the union will not satisfy a claim for breach of the duty of fair representation." *Thomson v. Verizon Md., Inc.*, 140 F. Supp. 2d 546, 551 (D. Md. 2001) (citing *Smith v. Local 7898, United Steelworkers of America*, 834 F.2d 93, 95 (4th Cir.1987)). In addition, a plaintiff must demonstrate "'substantial reason to believe that a union breach of duty contributed to an erroneous outcome in the contractual proceedings.'" *Id.* (quoting *Ash v. United Parcel Service*, 800 F.2d 409, 411 (4th Cir.1986)).

Lay alleges that Local 689 breached its duty of fair representation during the grievance and arbitration process by not conferring with WMATA representatives, by invoking arbitration before prosecuting his grievance, and by not calling specific witnesses on his behalf during the arbitration hearings. AC at ¶¶ 36, 38–40, 54–55. He also contends that Local 689 breached its duty of fair representation by failing to notify him of his right to "appeal an adverse arbitration decision," as well as by failing to inform him that there was a six-month deadline to file suit. *Id.* at ¶ 56. The Court rejects all of these contentions.

*1. Failure to Represent Lay During Grievance and Arbitration Processes*

Lay claims Local 689 breached its duty of fair representation during the grievance process by failing to confer and "hold a formal conference" with WMATA representatives in an effort to resolve his grievance. *Id.* at ¶¶ 36, 38. He also contends that Flemmings-McCann "invoked arbitration without following the necessary steps required for the filing of the grievance procedure" and, at the arbitration proceeding, "instructed Union Shop Steward Ozzie Andrews not to testify" on his behalf. *Id.* at ¶¶ 39–40.

"As long as a union does not arbitrarily ignore a meritorious grievance or handle it in a perfunctory manner, that union has not violated its duty of fair representation." *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 658 (4th Cir. 2002). Local 689 clearly did not ignore Lay's grievance, nor did it pursue Lay's grievance perfunctorily. Flemmings-McCann met three times with a WMATA representative on Lay's behalf, on July 14, 2016, October 18, 2016, and November 4, 2016. *See* ECF No. 9-3 at 2 (Local 689 Grievance Form tracking Lay's grievance, No. 11030). After all three meetings, WMATA denied Lay's grievance. *See id.* It was only after these meetings took place that arbitration proceedings went forward, specifically in February and March 2017. Accordingly, Lay's allegations that Local 689 failed to hold formal conferences with WMATA or sought arbitration without first prosecuting his grievance are meritless. He has not stated a plausible claim that Local 689 breached its duty of fair representation in this regard.

Further, Lay has not alleged in plausible detail why Local 689's decision not to call Andrews as a witness at the arbitration hearing on March 31, 2017 was in any way "arbitrary, discriminatory, or in bad faith." He alleges that Andrews would have been "the chief witness that would testify to the fact that the allegations leading to Lay's dismissal where [sic] unfounded" but Flemmings-McCann prevented this by not calling Andrews to testify. *Id.* at ¶ 40. But rather than

9

specifying the content of Andrews's supposed testimony, nor explaining how it might have led to a different outcome in the arbitration decision, Lay simply asserts that, had Andrews testified, the arbitration panel would have found Lay's termination to be "unfounded." No specifics given. Beyond that, no suggestion how keeping Andrews from testifying would have been so objectively irrational and "arbitrary" as to breach the duty of fair representation. Characterizing Andrews as a "chief witness" does not suffice to indicate how Andrews's testimony might have affected the outcome of the arbitration. Absent a plausible claim of arbitrariness, discrimination, or bad faith with respect to a union's strategic decision during the grievance process, including whether or not to call certain witnesses, courts generally defer to union judgments. *See, e.g.*, *Samosky v. United Parcel Serv.*, 944 F. Supp. 2d 479, 507–08 (S.D. W. Va. 2013) (citing *O'Neill*, 499 U.S. at 78). Because Lay offers only conclusory statements that not calling Andrews to testify on his behalf at the arbitration proceeding breached the union's duty of fair representation, he has not, on this basis, pled a plausible claim against Local 689.

> 2. *Failure to Notify Union Member of Option to Seek Judicial Review of Arbitration Board Decision*

As to Lay's second allegation of Local 689's breach of its duty of fair representation, i.e., that following the arbitration decision, the union failed to inform him of his "right to appeal an adverse arbitration decision" within six months, AC at ¶ 46, he fares no better. Local 689 contends that its duty of fair representation extends only to the representation obligations outlined in the collective bargaining agreement with WMATA. ECF No. 22 at 11. Because the collective bargaining agreement does not require Local 689 to seek judicial review on behalf of its members, nor does it require the union to inform its members of their right to seek judicial review through

actions for breach of the duty of fair representation, Local 689 submits that it has not breached its duty of fair representation. *Id.*

The scope of a union's duty of fair representation is coextensive with the scope of the obligations outlined in the collective bargaining agreement between the union and the employer of the union's members. *See El-Amin v. Bakery Express-Ms. Desserts*, No. Civ. CCB-03-2647, 2004 WL 1124948, at *5 (D. Md. May 14, 2004) (citing *McNamara–Blad v. Ass'n of Prof'l Flight Attendants*, 275 F.3d 1165, 1169–70 (9th Cir. 2002); *Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 171 (5th Cir. 1989); *Freeman v. Local Union No. 135, Chauffeurs, Teamsters, Warehousemen and Helpers*, 746 F.2d 1316, 1320–21 (7th Cir. 1984)). "If an employee claims that a union owes him a more far-reaching duty, he must be able to point to language in the collective-bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees." *United Steelworkers of Am., AFL-CIO-CIC v. Rawson*, 495 U.S. 362, 374 (1990).

Section 105 of the collective bargaining agreement between WMATA and Local 689 in effect at the time of Lay's grievance, arbitration, and dismissal addresses "Arbitration of Questions and Grievances." ECF No. 21-1 at 15. Section 105 provides that "[q]uestions or grievances that cannot be amicably adjusted . . . shall be submitted to a Board of Arbitration" and "the findings of a majority of said Board of Arbitration to be final and binding." *Id.* The remainder of the section details the process for empaneling the Board of Arbitration, including that it be comprised of three arbitrators: one designated by WMATA, one designated by Local 689, and one disinterested person chosen by the two designees. *Id.* However, neither Section 105, nor any other provision in the collective bargaining agreement requires Local 689 to represent its members after a final arbitration decision. While it might be helpful to members if the union provided such advice,

11

absent an express provision in the operative collective bargaining agreement, a labor union is not obliged to either (a) challenge an adverse arbitration decision on behalf of its members or (b) inform its members of their right to file a suit based on the decision, or to file any such suit within a limited period of time. *See, e.g.*, *Freeman*, 746 F.2d at 1321–22 ("Once the arbitrator denied plaintiff's grievance, the rationale for the duty of fair representation evaporated . . . The union was under no duty to provide [plaintiff] with more legal assistance than bargained for in the contract or required by law.").

Lay argues that advising him of his right to seek judicial review of an arbitration decision is merely a procedural act and, therefore, Local 689 is not entitled to the judicial deference usually afforded to the strategic decisions of a union. Indeed, "courts have consistently refused to accept unions' claims that their actions involved any judgment or strategy where the union simply failed to perform some procedural act." *Beck v. United Food and Commercial Workers Union, Local 99*, 506 F.3d 874, 880 (9th Cir. 2007). However, Lay's argument misses an important point: in order to breach the duty of fair representation by failing to perform a procedural act, the union must have a duty to perform the specific procedural act in the first place. *See, e.g.*, *Caputo v. Nat'l Ass'n of Letter Carriers*, 730 F. Supp. 1221, 1229 (S.D.N.Y. 1990) (holding that union had breached its duty of fair representation by missing a deadline to file a grievance on behalf of one of its members because the missed deadline was "not the result of an error of judgment . . . but rather an omission which is properly characterized as arbitrary."). Local 689 pursued Lay's grievance and arbitration to the full extent of the procedures outlined in the collective bargaining agreement with WMATA. The union did not breach the duty of fair representation by failing to perform any procedural or ministerial acts, as Lay alleges. To be sure, a union's failure to inform one of its members of a decision with respect to his grievance "might support [the] claim that the

[u]nion acted arbitrarily." *Moore v. Bechtel Power Corp.*, 840 F.2d 634, 637 (9th Cir.1988); *but see Caputo*, 730 F. Supp. at 1230 (stating that "as a matter of law, the failure to keep a grievant informed of the status of the grievance is not a breach of the duty of fair representation"). But the dispositive point in this case is that Local 689 *did* attempt to inform Lay of the arbitration board's decision by twice mailing a copy of that decision to his address on file: once on September 25, 2017, and again on October 18, 2017. *See* ECF No. 9-5 at 2–3. As explained in section II.A, it was only because of Lay's own failure to update Local 689 as to his current address in the manner provided in the union's constitution and general laws that he did not receive the arbitration board's decision sooner.

Lay has not pled a plausible claim that Local 689 breached its duty of fair representation by not informing him of his right (or the time within which) to seek judicial review of the arbitration board decision affirming his termination from WMATA.[2]

### III. Conclusion

For the foregoing reasons, Local 689's Motion to Dismiss, ECF No. 9, is **GRANTED WITH PREJUDICE**.

A separate Order will **ISSUE**.


**July 1, 2019**                                                                                    /s/

                                                                        **PETER J. MESSITTE**
                                                 **UNITED STATES DISTRICT JUDGE**

---

[2] Local 689 also argues that Lay's action should be dismissed because he failed to exhaust all available internal union procedures for alleging a breach of the duty of fair representation. Since the Court holds that Lay has failed to plead a plausible claim of breach of the duty of fair representation, it is unnecessary to determine whether Lay properly exhausted all internal union procedures before filing suit in this court.